**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

**SUNSHINE SHOPPING CENTER INC.**
**d/b/a MALL OF ST. CROIX,**
**YAHYA YUSUF, HATIM YUSUF,**
**and SAFI YUSUF,**

        **Plaintiffs,**

    **v.**

**TRAVELERS EXCESS AND**
**SURPLUS LINES COMPANY,**

        **Defendants.**
_____

1:24-cv-00026-WAL-EAH

**TO:**    Luma Salah Al-Shibib, Esq.
        Nathan Mirocha, Esq.
        Robert J. Kuczynski, Esq.

**ORDER**

**THIS MATTER** comes before the Court on the Motion to Stay Discovery Pending a Ruling on Defendant's Rule 12(b)(6) Motion to Dismiss, filed on March 27, 2025 by Defendant Travelers Excess and Surplus Lines Company ("Travelers"). Dkt. No. 23. Plaintiffs Sunshine Shopping Center, Inc. d/b/a Mall of St. Croix, Yahya Yusuf, Hatim Yusuf, and Safi Yusuf ("Plaintiffs" or "Insureds") filed an opposition, Dkt. No. 27, and Travelers filed a reply, Dkt. No. 29. For the reasons that follow, the Court will grant the Defendant's Motion to Stay and the discovery in this matter will be stayed until the District Judge rules on the Defendant's Motion to Dismiss.

**BACKGROUND**

**A. The Complaint**

On October 12, 2024, Sunshine Shopping Center and its individual insured directors and officers brought this insurance coverage action against Travelers. Dkt. No. 1. The Plaintiffs alleged that Travelers wrongfully refused to defend and indemnify them in a shareholder

derivative action despite the $1 million directors and officers ("D&O") liability insurance policy Travelers sold to Sunshine that expressly covers such claims. *Id*. ¶ 1. Plaintiffs assert that Travelers' denial is based on an "impermissibly broad interpretation and application of an exclusion that has the effect of rendering coverage for all shareholder claims a complete nullity." *Id*. ¶ 2. Because interpretations that render coverage illusory cannot be sustained, Plaintiffs contend that Travelers' coverage denial breaches its obligations under the policy. *Id.* Moreover, Travelers failed to diligently investigate the claim by refusing to give adequate consideration to Sunshine's coverage arguments. Together, these actions by Travelers have forced Sunshine, its directors and officers, to commence this action at the same time it is left funding the defense of an underlying shareholder derivative action (being litigated in the Superior Court of the Virgin Islands) on its own. *Id*. ¶¶ 4, 15.

The complaint alleges that, in September 2023, three of Sunshine's shareholders (Mustafa Yusuf, Hamad Yusuf, and Shihadeh Qattum) commenced a derivative action (the "Shareholder Action") against the company's directors and officers, and the company as a nominal defendant, alleging that the directors and officers mismanaged corporate operations and assets. *Id*. ¶¶ 19-22. The plaintiffs in the derivative action (the "Shareholder Plaintiffs") seek an accounting of corporate funds and allege damages suffered by Sunshine as a result of the directors and officers' alleged embezzlement of funds and negligent operations. They also want the ownership of certain properties be transferred from the individual directors and officers to Sunshine on the grounds that the properties were allegedly purchased with misappropriated corporate funds. *Id*. ¶¶ 23, 24.

Travelers sold Sunshine a policy (the "Policy") with D&O liability coverage for the June 13, 2023 to June 13, 2024 policy period. *Id.* ¶¶ 29, 30 & Dkt. No. 1-2 (copy of policy). The Policy covers Sunshine and its directors and officers for "Wrongful Acts" resulting from any claim and imposes on Travelers a duty to defend and indemnify. *Id*. ¶¶ 32, 35. The Shareholder Action is

a covered Security Holder Derivative Claim because it is a civil proceeding asserted against the company's directors and officers alleging their wrongful acts while acting in those capacities, and was brought on behalf of Sunshine. *Id*. ¶¶ 36-41.

Sunshine provided timely notice of the Shareholder Action to Travelers in September 2023, but Travelers refused to assign defense counsel and advised it would deny coverage; it issued a coverage declination on October 20, 2023. *Id.* ¶¶ 42-44. Travelers invoked an exclusion called "Addition of Ownership Percentage Exclusion Endorsement" (the "Ownership Percentage Exclusion" or "Exclusion") that provides: "The Company will not be liable for Loss for any Claim brought or maintained by or on behalf of, or with the assistance, participation or solicitation of any person or entity that owns or did own more than 5% of the Named Insured." *Id*. ¶ 45. According to Travelers, the three plaintiffs in the Shareholder Action own between 14.97% and 15.7% of stock in Sunshine. *Id.* ¶ 46. But "[e]very shareholder of Sunshine Shopping owns more than a 5% interest in the company," which Travelers knew when it sold the Policy. *Id*. ¶¶ 49, 53, 56. In July 2023, Sunshine wrote to Travelers asking it to reconsider and reverse its coverage denial, but Travelers maintained its denial. *Id*. ¶¶ 60-64.

Plaintiffs assert claims for Breach of Contract (Count I) arising from the wrongful denial of Travelers' duty to defend and indemnify; Declaratory Judgment (Count II) that Travelers must immediately assume the defense of its policyholders in the underlying action and indemnify them for any liability; and Tortious Breach of the Duty of Good Faith and Fair Dealing (Count III) seeking damages for bad faith and attorney's fees and costs. *Id.* ¶ 6; *id*. at 12-18.

**B**. **Motion to Dismiss; Opposition to Motion to Dismiss; Reply**

On December 18, 2024, after receiving an extension to respond to the complaint, Travelers filed a motion to dismiss for failure to state a claim. Dkt. Nos. 16, 17. The motion describes the instant action as arising from an "internecine family dispute over the operation of their closely-held corporation," Sunshine. Dkt. No. 17 at 1. Three of Sunshine's shareholders

—the Shareholder Plaintiffs—individually own approximately 15% of its shares and are disgruntled with how the other two shareholders and one of their sons (the "Insured Persons"), current or former directors and officers of Sunshine, are overseeing Sunshine and filed the Shareholder Action alleging mismanagement of corporate operations and assets. *Id*. at 1-2.

Under Virgin Islands law, the scope of the insurance policy is governed by its express and unambiguous terms and, applying those terms, there is no coverage for the Shareholder Action. *Id.* at 2. This is because the Policy's coverage is subject to an Ownership Percentage Exclusion that bars coverage for any claim brought by any person that owns or did own more than 5% of the named insured—Sunshine. *Id*. The Insured Persons concede that the Shareholder Plaintiffs each own 5% or more of Sunshine's stock but seek nevertheless coverage for the Shareholder Action by asking the Court to override the Policy's express terms and overrule black letter law supporting the denial of coverage. *Id*. But the Policy provides coverage for a number of management liability exposures even when the exclusion is applied and its remaining coverage is not illusory as a matter of law. *Id.* Therefore, the breach of contract and declaratory judgment claims necessarily fail. *Id.* at 3.

Travelers goes on to argue that, in the absence of coverage, the count for tortious breach of the duty of good faith and fair dealing also fails as a matter of law. *Id.* And because the applicability of the ownership exclusion percentage is not fairly debatable, which provided Travelers with a reasonable justification for denial of coverage, the Insured Persons' bad faith claim cannot be permitted to proceed beyond the pleading stage. Thus, the Court should grant Travelers' motion and dismiss the complaint. *Id.*

In opposition to the motion to dismiss, the Insured Parties argue that when exclusions to a policy eliminate the very coverage the policy purports to extend, courts reject the literal interpretation of the policy language as leading to absurd results. Dkt. No. 20 at 6. The exclusion relied upon by Travelers to deny coverage "eviscerated all coverage for shareholder derivative

actions because every shareholder of the company owned more than a 5% interest" and leads to an absurd and nonsensical result. *Id*. at 6-7. They argue that, if the exclusion is applied literally, "it conflicts with the Policy's overage for Security Holder Derivative Claims." *Id.* at 8. They further contend that Travelers has not shown that its position does not either result in illusory coverage or creates an ambiguity that must be resolved in Plaintiffs' favor, and therefore the motion to dismiss should be denied. *Id*. at 10.

In its reply, Travelers points out that the Insured Parties concede that the Ownership Percentage Exclusion (the 5% provision) applies on its face to the Shareholder Action because each of the Shareholder Plaintiffs admittedly owns more than 5% of Sunshine stock. They nevertheless argue that the Policy expressly covers Security Holder Derivative Claims and that application of the Exclusion would render such "promised coverage" illusory or ambiguous. Dkt. No. 21. But the Policy's plain language, by its express terms, does not promise coverage for Security Holder Derivative Claims. It only exempts such claims from certain exclusions (exceptions to exclusions are not a promise of coverage) and does not negate a type of coverage the Policy affirmatively agreed to provide. *Id*. at 1-4. Further, applying the Ownership Percentage Exclusion as written to bar coverage does not render the D&O coverage illusory or render the policy ambiguous or show bad faith. *Id.* at 6-12.

### B. The Motion to Stay Discovery; Opposition; Reply

On March 19, 2025, the Court issued an Order setting an initial conference for April 30, 2025 and providing deadlines for initial disclosures, a meet and confer conference, and filing discovery memoranda. Dkt. No. 22.

#### 1. Travelers Motion to Stay

On March 27th, Travelers filed a Motion to Stay Discovery Pending a Ruling on Defendant's Rule 12(b)(6) Motion to Dismiss. Dkt. No. 23. In its brief in support of the motion, Travelers reprises the relevant facts of this coverage action, noting, inter alia, that it is

undisputed that each of the Shareholder Plaintiffs owns more than 5% of Sunshine's stock and thus the Policy's Ownership Percentage Exclusion precluded coverage for the Shareholder Action. Dkt. No. 24 at 4-6. It therefore filed a motion to dismiss because the Policy did not afford coverage for the Shareholder Action. *Id*. at 6. The Plaintiffs' sole argument is that Travelers' coverage position impermissibly renders the Policy's coverage illusory because the Policy "promises coverage" for Security Holder Derivative Claims, and the application of the Exclusion to preclude coverage for the Shareholder Action rendered such purported coverage illusory. But the Policy neither promised such coverage nor did it render such coverage illusory. *Id*.

Travelers contends that the four considerations a court must assess when determining whether to stay discovery all weigh in favor of a stay. The first factor—unduly prejudicing or presenting a clear tactical advantage to the Insureds—did not favor a stay because the Insureds—the individual Plaintiffs together with Sunshine—showed little urgency in prosecuting their case and because their claims are document based, thereby minimizing reliance on memories or other evidence. *Id*. at 9. Travelers points out that the Shareholder Action began in September 2023 and Travelers denied coverage in October 2023. The Insureds waited nine months, until July 2024, to have their attorney respond to the denial, and then waited another three months, until October 2024, to file their complaint. *Id.* This timeline undercuts any argument that they would experience undue prejudice or a tactical disadvantage due to a brief stay of discovery while the Court adjudicates the motion to dismiss. *Id.*

In addition, the claims for breach of contract, declaratory judgment, and tortious breach of the duty of good faith and fair dealing all center around documents (the Policy, the Shareholder Complaint, Travelers' letter denying coverage and the Insureds' response), such that there is little risk that a "delay in discovery [could] be prejudicial to plaintiffs because memories fade and evidence [could] be lost." *Id*. at 10 (quoting *McCurdy v. Johnson & Johnson*, No. 23-cv-18, 2023 WL 10512305, at *4 (D.V.I. Oct. 16, 2023)). Further, on March 19, 2025, the

Court issued an Order Setting an Initial Conference for April 30, 2025, and no party has served discovery. Thus, the Insureds are unable to show any prejudice, much less undue prejudice, from a brief stay of discovery while the Court resolves Travelers' motion to dismiss. *Id*. at 10-11.

As to the second stay factor, Travelers argues that denial of a stay would create a clear case of hardship and inequality for it because litigation would force it to spend significant time and money responding to bad faith discovery beyond what is necessary to resolve the coverage dispute, when coverage has not even been established. *Id*. at 11. Moreover, it would be unfair to subject it to any discovery where it has made a clear and convincing showing that the motion to dismiss should be granted, as shown in its argument on the third stay prong. *Id*. at 11-12.

Third, a stay would simplify the issues and trial of this case. *Id.* at 12. Taking a "preliminary peek" at the potential merits of the dispositive motion, the Ownership Percentage Exclusion is unambiguous and excludes lawsuits brought by those owning more than 5% of Sunshine. As argued in the motion to dismiss, the Shareholder Complaint specifically alleges that each Shareholder Plaintiff owns more than 5% of Sunshine, which the Insureds do not dispute. *Id*. at 12-13. The Insureds' only coverage argument is that applying that Ownership Percentage Exclusion to preclude coverage renders the Policy illusory because all of Sunshine's shareholders owned more than 5% of the stock when the Policy was issued. But Policy language directly contradicts this argument, and under Third Circuit precedent, an insurance policy is illusory only where it offers no effective protection, which is not the case here. Thus all the claims fail as a matter of law, and this factor weighs in favor of discovery. *Id*. at 13-14.

Finally, discovery is not complete and a trial date has not been set. *Id.* at 14. No discovery has been exchanged, no initial conference has been held, and the Court has not issued a Scheduling Order, much less set a trial date. This Court has held that similarly positioned cases warranted a stay. *Id.*

### 2. Plaintiffs' Opposition

In their opposition, Plaintiffs assert that the four stay factors warrant denial of Travelers' motion. Dkt. No. 27. Travelers failed to fulfill its duty to provide a defense to the individual Plaintiffs in the underlying Shareholder Action. Travelers suggests that Plaintiffs failed to act in a diligent manner to pursue their rights against Travelers, but that is not true. When Travelers denied coverage, Sunshine decided to retain coverage counsel to appeal directly to Travelers to reconsider its coverage position. After Travelers refused to reconsider its decision, Plaintiffs filed the instant suit within three months, which demonstrates its diligence. *Id*. at 11-12. Having decided to file this action to enforce their rights, they are entitled to move forward with this case, including discovery as contemplated by the federal and local rules. *Id.* at 12.

The "indefinite stay" sought by Travelers will create a tactical disadvantage for Plaintiffs because witnesses may become unavailable and memories may fade. *Id*. at 13. Plaintiffs need discovery on their bad faith claim, including deposing Travelers regarding its underwriting intent in adding the Exclusion and what Travelers did to investigate the claim. Because an indefinite stay increases the risk that witnesses (here, the underwriter and claims handler) may become unavailable or their recollections about underwriting the Policy may fade, an indefinite stay is not proper in this case and the first factor weighs against a stay.

Second, Travelers has not demonstrated that it would suffer any hardship or inequity if discovery proceeds in the normal course. While Travelers argues that it will be harmed by having to engage in broad and extensive discovery, the only discovery in the case pertains to the bad faith claim, which will be neither arduous or expansive and is typical of the discovery routinely sought in insurance coverage cases. *Id*. at 13-15. This will involve typical litigation costs. *Id.* at 16. Travelers has not shown why the instant matter is different from any other case

in which a dispositive motion has been filed early and where discovery proceeds despite a pending dispositive motion. *Id*. This factor also weighs against a stay.

Third, a stay would not simplify the issues and trial of the case, as Travelers failed to make a clear and convincing showing that it will prevail on its motion to dismiss. *Id*. at 16-17. Travelers' argument that the Ownership Percentage Exclusion bars coverage cannot be applied as Travelers interprets it. Either Travelers sold a Policy with illusory coverage for shareholder derivative suits or with conflicting provisions that expressly extend coverage to shareholder derivative suits but also have the effect, through the exclusion, of negating all coverage for shareholder derivative suits. *Id*. at 17. If the Policy is illusory, the exclusion cannot be enforced; if it is not illusory, then it is ambiguous at the very least because its provisions conflict and would be strictly construed against the insurance company. *Id*. at 17-19. As a result, the third factor weighs against a stay.

As to the fourth factor, the current procedural posture of the case is insufficient to warrant a stay since all of the other factors weigh heavily against granting Travelers' request for an indefinite stay. *Id.* at 20. The parties completed their exchange of initial disclosures on March 28th and conducted a meet and confer on April 3, 2025 regarding a proposed case schedule. *Id.* at 20. Plaintiffs intend to serve discovery on Travelers during the week of April 14 that will request routine discovery regarding underwriting the Policy, claims handling, and investigation of the claim. As discovery will not be burdensome, there is no reason to deviate from the usual rules and allow discovery to move forward. *Id*. at 21.

### 3. Travelers' Reply

In its reply filed on April 17, 2025, Travelers points out that Plaintiffs' underwriting of the Shareholder Action will not prejudice them because they could be made whole by a judgment in this case that could add any outlay for their defense to the damages, should they survive the motion to dismiss and go to trial. Dkt. No. 29 at 3-4. Further, they waited nine

months before their attorney responded to Travelers' denial of coverage and, even after Travelers filed its motion to dismiss in December 2024, they let the case play out and did not attempt to move the litigation along. Even though the parties conducted their Rule 26(f) conference on April 3rd, they still have not issued any written discovery on Travelers. *Id.* This lack of urgency shows they will not be unduly prejudiced by a stay of discovery. *Id*. Further, the underwriting occurred prior to the Policy's issuance on June 13, 2023, and the coverage investigation took place between September 2023 and July 2024. Less than two years have passed since the underwriting and coverage investigation, which diminishes any argument regarding fading recollections of witnesses. *Id.* at 5.

To the extent the Insureds state that they will confine discovery to documents and testimony relating to the Sunshine account, Travelers' underwriting and its response to the Shareholder Action, then such discovery would not be outside the norm for a coverage action. *Id*. at 6. But any amount of discovery would create a hardship because Travelers made a clear and convincing showing that the Insureds are not entitled to coverage and their causes of action should be dismissed. *Id*. Travelers repeats its merits argument that the Policy does not promise coverage for shareholder derivative actions and asserts that the Insureds can point to nothing supporting their bald assertion that Travelers promised to defend Sunshine's directors and officers if they were ever sued in a shareholder derivative action. *Id*. at 7-8 (citing Dkt. No. 27 at 5). Further, an insurance law principle provides that exceptions to exclusions do not create coverage if a separate exclusion applies. The Ownership Percentage Exclusion expressly precludes coverage for the Shareholder Action, and the Security Holder Derivative Claim exception found in other exclusions cannot override that clear intent. *Id.* at 8. Finally, discovery has not started and a trial date has not been set, and thus this factor also weighs in favor of a stay. *Id.* at 10. In sum, all factors weigh in favor of a stay. *Id.*

**DISCUSSION**

**I.      Relevant Standards and Case Law**

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. Rule 26 does, however, provide that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). It is well settled, though, that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). Matters of docket control and the conduct of discovery have long been "committed to the sound discretion of the district court," *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982), including whether to stay discovery, *Ferguson v. USAA Gen. Indem. Co.*, 334 F.R.D. 407, 409 (M.D. Pa. 2019) (citing, inter alia, *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001)).  That discretion extends to decisions by U.S. Magistrate Judges. *See Harman v. Datte*, 427 F. App'x 240, 243 (3d Cir. 2011) (finding that magistrate judge did not abuse his discretion in staying discovery pending review of motions to dismiss the complaint).

Still, motions to stay discovery "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Worldcom Techs., Inc. v. Intelnet Int'l, Inc.,* 2002 WL 1971256, at *6 (E.D. Pa. Aug. 22, 2002) (internal quotation marks omitted). In addition, a stay of discovery "is not appropriate solely because a motion to dismiss is pending." *Pennsylvania v. Navient Corp.*, 348 F. Supp. 3d 394, 401 (M.D. Pa. 2018)

(internal quotation marks omitted); *see also* LRCi 26.6 (discovery not automatically stayed upon filing of a Rule 12 motion to dismiss).

In this Circuit, when deciding whether to exercise their discretion to grant a stay of discovery after a dispositive motion has been filed, courts weigh four considerations:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set.

*Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 182 (M.D. Pa. 2019) (internal quotation marks omitted); *see also In re Revel Ac, Inc.,* 802 F.3d 558, 565 (3d Cir. 2015); *Vitalis v. Crowley Caribbean Servs., LLC*, No. 20-cv-00020, 2021 WL 4494192, at *1 (D.V.I. Sept. 30, 2021). In *Ainger v. Great American Assurance Company*, No. 1:20-cv-00005, 2022 WL 3139079, at *7 (D.V.I. Aug. 4, 2022), this Court adopted a "preliminary peek" approach in deciding whether to stay a case pending resolution of a dispositive motion. This involves a preliminary consideration of the potential merits of the dispositive motion and an assessment of whether the motion to dismiss is likely to be granted. Therefore, in assessing the third prong of the stay test, this Court will follow its preliminary peek cases that conclude a stay is warranted only when the defendant makes a "clear and convincing" showing that the motion to dismiss will likely be granted. In the Court's view, this concise articulation emphasizes the high bar a movant needs to overcome in order for its stay motion to be successful. *See Warden v. Tschetter Sultzer, P.C.*, 2022 WL 1487576, at *4-5 (D. Colo. May 11, 2022). The Court subsequently issued numerous orders regarding the factors required for a stay of discovery. *See, e.g., Doe v. Office of Disciplinary Counsel,* No. 24-cv-0020, (D.V.I. Mar. 7, 2025)*; McCurdy,* 2023 WL 10512305, at *3; *Codrington v. Steadfast Ins. Co.*, No. 19-cv-0022, 2023 WL 2329440 (D.V.I. Mar. 2, 2023); *Pedro v. Paragon Sys.,* No. 22-cv-0043, 2022 WL 20678356, at *2 (D.V.I. Aug. 22, 2022); *Mosler*

*v. Cairns*, 19-cv-0007, 2022 WL 3370731 (D.V.I. Aug. 16, 2022); *Rodriguez-Simmiolkjier v. United States*, No. 21-cv-0257, 2022 WL 3226354 (D.V.I. Aug. 10, 2022).

## II. Application

### A. Whether a Stay Would Unduly Prejudice or Present a Clear Tactical Disadvantage to the Non-Moving Party

This case, filed in October 2024, has barely begun. After Travelers received an extension, it filed a motion to dismiss on December 18, 2024, Dkt. No. 116. Once briefing was completed, the Court issued an Order on March 19, 2025 that set an Initial Conference for April 30, 2025 and contained deadlines for initial discovery. Dkt. No. 22. Shortly thereafter, Travelers filed the instant Motion to Stay Discovery. Dkt. No. 23.

Travelers argues that the timeline leading to the filing of the instant complaint does not show any urgency on the part of Plaintiffs and therefore a stay would not impose prejudice, much less undue prejudice. They assert that the Shareholder Action began in September 2023; Travelers denied coverage in October 2023; but the Insureds waited nine months, until July 2024, to have their attorney respond to the denial, and then waited another three months, until October 12, 2024, to file their complaint in this action. Dkt. No. 23 at 9. Plaintiffs respond that, when Travelers denied coverage, Sunshine decided to retain coverage counsel to appeal the decision (but does not give any date it did so), and filed the instant suit within three months, which demonstrates its diligence. Dkt. No. 27 at 11-12.

Plaintiffs' explanation, however, does not provide any insight as to why it took nine months to retain coverage counsel who responded to the denial—which gives the appearance of a lack of diligence such that a stay would not unduly prejudice them.[1] And while the Court considers the holding in *Udeen v. Subaru of America, Inc.*, 378 F. Supp. 3d 330, 333 (D.N.J. 2019),

---

[1] Although Sunshine would have had to have been represented by counsel in the Shareholder Action, it appears that Sunshine retained a different counsel to appeal the coverage decision.

that a delay in discovery can be prejudicial to plaintiffs because memories fade and evidence can be lost, at least two of the claims in this matter (breach of contract and declaratory judgment) are solely document based, thereby minimizing reliance on memories or other evidence. *Ainger*, 2022 WL 3139079, at *8. Further, because the underlying events occurred relatively recently (issuance of the Policy in 2023, investigation leading to denial of coverage in 2023 and 2024), it is unlikely that witness recall problems would impact this case. And finally, Plaintiffs characterize the requested stay as "indefinite." While this Court does not know when the District Judge will rule on the motion to dismiss, it is an exaggeration to characterize such a stay as "indefinite." *See Actelion Pharms., Ltd. v. Apotex Inc.*, No. 12-cv-5743, 2013 WL 5524078, at * 4 (D.N.J. Sept. 6, 2013) (a delay in resolving the defendants' dispositive motions does not, without more establish that undue prejudice will result from issuing a stay). The Court therefore concludes that the Plaintiffs would not be unduly prejudiced by a stay and that this factor favors a stay.

### B. Whether Denial of a Stay Would Create a Clear Case of Hardship or Inequity for the Moving Party

Travelers argues that litigation would force it to spend significant time and money responding to bad faith discovery beyond what is necessary to resolve the coverage dispute, when coverage has not even been established, and that it would be unfair to subject it to discovery where it has made a clear and convincing showing that the motion to dismiss should be granted under the third stay prong. Dkt. No. 23 at 11-12. Plaintiffs respond that the only discovery in the case pertains to the bad faith claim, which will be neither arduous or expansive and is typical of the discovery routinely sought in insurance coverage cases and involves typical litigation costs. Dkt. No. 27 at 13-16. In its reply, Travelers acknowledges that, to the extent the Insureds state that discovery will be confined to documents and testimony relating to the Sunshine account, Travelers' underwriting and its response to the Shareholder Action, then

such discovery would not be outside the norm for a coverage action. Dkt. No. 29 at 6. But since they have made a clear and convincing case for dismissal, it would be unfair for it to be subjected to discovery. *Id.*

When addressing this stay prong, this Court has cited case law holding that defendants "are always burdened when they are sued, and the ordinary burdens associated with litigating a case do not constitute undue burdens." *Warden*, 2022 WL 1487576, at *5 (internal quotation marks, alterations, and citations omitted); *cf. Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (opining that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not satisfy burden on movant seeking a protective order). This point weighs against a stay.

However, balanced against that point is the fact that, if the Court concludes that the Defendant has made a "clear and convincing showing" on the next stay prong—whether a stay would simplify the issues and trial—such that the motion to dismiss would likely be granted, it would be unfair to subject it to discovery. And given that the Court concludes that the next prong heavily weighs in favor of a stay, this factor does as well—or is, at most, at equipoise, favoring neither Plaintiffs' or Defendant's position.

### C. Whether a Stay Would Simplify the Issues and the Trial of the Case

Travelers argues that a stay would simplify the issues and the trial of the case because a "preliminary peek" at the merits of the motion to dismiss would result in the Court concluding that the Ownership Percentage Exclusion is unambiguous and excludes coverage of the Shareholder Action, and that that Exclusion does not render the Policy illusory. Dkt. No. 23 at 12-14. The Plaintiffs counter that Travelers failed to make a clear and convincing showing that it will prevail on its motion to dismiss. Travelers' argument that the Exclusion bars coverage cannot be applied as Travelers interprets it because it would render the Policy illusory or ambiguous, resulting in coverage for the Shareholder Action. Dkt. No. 27 at 18-20. Having

reviewed the motion to dismiss, the opposition, and the reply, the Court concludes that Travelers has made a clear and convincing showing that the motion would likely be granted.

The Court starts its preliminary peek, as it should, with a review of relevant provisions of the Policy. The Insuring Agreements section of the Policy provides, in relevant part, that Travelers will pay on behalf of: (A) Insured Persons, (B) the Insured Organization, and (C) the Insured Organization, Loss for Wrongful Acts that result from any Claim made in the Policy Period. *See* Dkt. No. 1-2 at 34 (Policy, Section I, Insuring Agreements). Claims, in turn, are defined in Section III, and include "a civil proceeding commenced by service of a complaint or similar pleading . . . against an Insured for a Wrongful Act." Dkt. No. 1-2 at 34 (Section III(A)(2)). The D&O liability coverage is modified by an endorsement—the Ownership Percentage Exclusion Endorsement—that is added to the Exclusion Section and provides: "The Company will not be liable for Loss for any Claim brought or maintained by or on behalf of, or with the assistance, participation, or solicitation of any person or entity that owns or did own more than 5% of the Named Insured." Dkt. No. 1-2 at 95.

The instant Complaint asserts that the Plaintiffs in the Shareholder Action own more than 5% of Sunshine Stock. Dkt. No. 1, ¶¶ 3, 49-52. They also do not dispute that that Exclusion applies to the Shareholder Action. *id.*, but argue that applying the Exclusion would eviscerate coverage and render the Policy's purported coverage for shareholder derivative actions illusory or at the least ambiguous. Dkt. No. 20 at 16-23; Dkt. No. 27 at 5-6, 17-20.

A preliminary peek review of the Exclusion's language shows that it is clear and unambiguous, and given that all of the Shareholders in the Shareholder Action own or did own more than 5% of Sunshine stock, the Exclusion applies and precludes coverage for the Shareholder Action. *See, e.g., Madison Mech. Inc. v. Twin City Fire Ins. Co.*, No. 17-cv-1357, 2019 WL 6035690, at *5-6 (D. Md. Nov. 14, 2019) (concluding as a matter of law that similar shareholder exclusion applied where record showed a claimant owned more than 10% of the

company's stock, which triggered the exclusion). Because coverage of the Shareholder Action is not available for Plaintiffs, their claims for breach of contract and declaratory judgment would fail and would be dismissed. And in order to plead a tortious breach of the duty of good faith and fair dealing, Plaintiffs would have to establish a breach of the Policy by Travelers, which they did not do.

Plaintiffs' arguments against the application of the plain language of the Policy appear to be unavailing. They assert that the Policy "expressly covers Security Holder Derivative Claims" and therefore Travelers should provide coverage for the Shareholder Action. Dkt. No. 1, ¶¶ 3, 40, 41, 56, 70, 81, 102, 104. But a Security Holder Derivative Claim is defined as "any Claim brought on behalf of. . . the Insured Organization by one or more security holders of the Insured Organization in their capacity(ies) as such, but only if such Claim is brought and maintained without the assistance. . . of any member of the board of directors, officer. . . ," *Id*. at 36 (Section III(J)). As set forth above, the Insuring Agreements for D&O coverage that govern the scope of coverage, provides that Travelers will pay on behalf of Insured for Wrongful Acts resulting from a claim. Dkt. No. 1-2 at 34. The Insuring Agreements do not refer to Security Holder Derivative Claims because that term does not define the scope of coverage. Rather, the general definition of "Claim" defines the scope of coverage, and that definition is subject to the Exclusion. As a result, the language cited by the Insureds does not "promise" coverage for Security Holder Derivative Claims.

The Plaintiffs also contend that reading the Policy to exclude coverage for the Shareholder Action makes coverage illusory. Coverage is illusory only if it offers no effective protection. *Berardi v. USAA Gen. Indem. Co*., 2023 WL 4418219, at *1 n.3 (3d Cir. July 10, 2023)("To prove that insurance coverage is illusory, a plaintiff must show that the provision offers no effective protection") (internal quotation marks omitted). If a policy has a potentially broad exclusion, that does not make the policy illusory. *PNC Fin. Servs. Grp. Inc. v. Hous. Cas. Co.,*

647 F. App'x 112, 119 (3d Cir. 2016). In order to show that coverage is illusory under the Policy, Plaintiffs would have to demonstrate that the Exclusion nullifies all coverage for "Claims" in general under the D&O coverage, which they have not shown. *See, e.g., SXSW, L.L.C. v. Fed. Ins. Co.*, No. 22-50933, 2024 WL 1216560, at *4-5 (5th Cir. Mar. 21, 2024) (coverage under D&O policy with similar definitions of Claim and Wrongful Act for customer claims alleging unjust enrichment and conversion against insured company). It thus appears from a preliminary peek at the merits of the case that Travelers has made a clear and convincing showing that its motion to dismiss will be granted. *See Actelion Pharms. Ltd.*, 2013 WL 5524078, at *5 ("where a pending motion to dismiss" "may result in a narrowing or outright elimination of discovery [,]" "the balance [of competing interests] generally favors granting a motion to stay."). The third factor heavily weighs in favor of a stay of discovery.

### D. Whether Discovery is Complete and/or a Trial Date Has Been Set

As indicated above, this Court issued an Order in March 2025 providing deadlines for the parties to exchange initial discovery and setting an initial conference for April 30, 2025. Dkt. No. 22. Because discovery has only barely begun, no Scheduling Order has been issued, and no trial date has been set, this factor weighs in favor of a stay. *See Ainger*, 2022 WL 3139079, at *10 (minimal discovery in a case weighs in favor of granting a stay on this stay prong).

### CONCLUSION

In sum, three of the four factors weigh in favor of granting a stay of discovery. The Court therefore concludes that a stay of discovery is warranted pending the District Judge's adjudication of Travelers' Motion to Dismiss, Dkt. No. 16, and that the Motion to Stay, Dkt. No. 23, should be granted.

Accordingly, it is hereby **ORDERED:**

*Sunshine Shopping Center Inc. v. Travelers Excess & Surplus Lines Co.*
1:24-cv-00026-WAL-EAH
Order
Page 19

1. Travelers' Motion to Stay Discovery Pending a Ruling on Defendant's Rule 12(b)(6) Motion to Dismiss, Dkt. No. 23, is **GRANTED**.

2. Discovery is therefore **STAYED** in this matter pending resolution of Travelers' Motion to Dismiss, Dkt. No. 16, by the District Judge.

3. The parties are not required to comply with the remaining deadlines in the March 19, 2025 Order concerning initial discovery, and the April 30, 2025 initial conference is **CANCELLED**.

ENTER:

Dated: April 29, 2025

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE